## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

TERRENCE L. JACKSON,
**Plaintiff,**                                                                          **PLAINTIFF**

**v.**                                                              **CIVIL ACTION NO. 2:17-CV-2339**

NIKE, INC.,
**Defendant.**                                                                       **DEFENDANT**

**JURY TRIAL DEMAND**

### COMPLAINT

COMES NOW, Plaintiff TERRENCE L. JACKSON (hereinafter, "JACKSON"), by and through the undersigned counsel, and files this, his Complaint and Jury Demand against Defendant NIKE, INC. (hereinafter "NIKE"). This is an action to recover actual and punitive damages for discrimination based upon race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### PARTIES

1. Plaintiff, Terrence L. Jackson, is an adult resident citizen of 1661 Sutton Meadow Lane, Cordova, TN 38016. JACKSON is a black male.

2. Defendant, NIKE, is an Oregon corporation with its principal place of business at 1 SW Bowerman Drive, Beaverton, OR 97005-6453, doing business in the State of Tennessee, at 8400 Winchester Road, Memphis, Tennessee 38125. NIKE can be reached for service through its registered agent, National Registered Agents, Inc. 800

South Gay Street, Suite 2021, Knoxville, TN 37929-9710.

## JURISDICTION AND VENUE

3.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343, for a cause of action arising under the Title VII of The Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000(e) and 42 U.S.C. § 1981. This Court has authority to award costs and attorney's fees under 42 U.S.C. § 1988.

4.    Venue is proper in this action pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiff's claims occurred in Memphis, Shelby County, Tennessee, which is within the Western District of Tennessee, Western Division.

5.    Plaintiff timely filed Charges of Discrimination, Charge Number 490-2014-02629 with the United States Equal Employment Opportunity Commission (hereinafter, "EEOC") for race discrimination on November 4, 2014, against the Defendant. The Plaintiff also filed a Charge of Discrimination Charge Number 490-2015-01319 for retaliation on April 28, 2015, a true and correct copy of which are attached as collective Exhibit "A." Plaintiff received two Notice of Suit Rights for the corresponding charges from EEOC both dated February 27, 2017, true and correct copies of which are attached as collective Exhibit "B."

6.    Plaintiff timely files this cause of action within the appropriate statute of limitations for claims arising under Title VII.

## STATEMENT OF FACTS

7.    Plaintiff was hired by Nike as a part-time Maintenance Technician on or about

January 31, 2009, at the Defendant's Memphis distribution center.

8.     Plaintiff was promoted to a full-time Maintenance Technician in May, 2013.

9.     Plaintiff was supervised by the Defendant's Maintenance Area Manager Eugene Haley (White).

10.     On or about August 1, 2013, Plaintiff was conducting his preventative maintenance ride around checking conveyor units. Plaintiff was eating crackers while riding. Plaintiff was told by his supervisor Mr. Haley that he could not eat and ride. Plaintiff asked why the other technicians can eat and ride but he cannot.

11.     On or about August 7, 2013, Plaintiff had to take his medication (injection) to help with a medical condition. Mr. Haley asked if Plaintiff could take the shot some other time. A white employee, R. Sullivan that used to work for Mr. Haley would take shots for the same condition all the time during work hours with no comments by Mr. Haley.

12.     On or about August 27 and 28, 2013, both around 11PM CST, Plaintiff noticed Mr. Haley treating the Plaintiff differently from the white employees by separating the Caucasian Technicians from the Plaintiff and discussing work matters.

13.     During that same time, Plaintiff would have a task that he would be working on and Mr. Haley would direct the Plaintiff to do a different task, while he would let the Caucasian technicians to determine their own tasks to perform without direction.

14.     October 25, 2013, Plaintiff notified supervisors Mark Fortune (white) and Gene Haley that he would be attending his sons' Air Force and Army boot camp graduations. He received no response to the email.

15.     November 4, 2013, Plaintiff had a one on one with Mr. Haley, and discussed that

3

Plaintiff felt as if he was being treated unfairly and brought up, again, the importance of the Boot Camp Graduations for his sons. Mr. Haley stated that copying Mr. Mark Fortune looks like the Plaintiff is trying to suck up.

16.     November 15, 2013, Plaintiff had a meeting with Mr. Haley and technician Dale Stasko (white). During the meeting, Mr. Haley hardly acknowledged Plaintiff's presence.

17.     November 18, 2013, Plaintiff was trying to correct some dates for his son's graduation from Army Boot Camp and he was planning on taking off the 10th and the 13th of December 2013. Mr. Haley stated that he did not have time for that right now.

18.     November 21, 2013, Mr. Haley, again, asked the Plaintiff why he copied Mr. Sterling (white) and Mr. Fortune on all of the work Plaintiff performed.  Plaintiff also expressed for the 3rd or 4th time that he needs Paid Time Off for his sons' graduations.

19.     February 18, 2014, March 26, 2014, March 27, 2014, and April 1, 2014, are all dates in which Mr. Haley would only communicate with all the white technicians, allowing them to do all the work they prepped and did not talk to the Plaintiff.

20.     April 15, 2014, Mr. Haley and manager Frank Branum (white) had a discussion with Plaintiff concerning the MRT#-P108 picking. Mr. Haley raised his voice and was getting aggressive, calling Plaintiff's repairs and monitoring into question.  Plaintiff told Mr. Haley he would discuss this conversation with upper management. Plaintiff also returned, after the conversation, to talk to Mr. Branum about Mr. Haley's behavior during the session.

21.     April 16 & 18, 2014, manager Mr. Fortune, spoke with Plaintiff and told him to use

Mr. Haley's experience and to get along with him to make things better for the Plaintiff.

22.    Plaintiff witnessed numerous occasions where Mr. Haley treated his black subordinates poorly in the maintenance department.

23.    Defendant's supervisor Mr. Fortune stated that there was racial prejudice in the maintenance department.

24.   June 30, 2014, manager Eugene Haley gave the Plaintiff a poor work performance evaluation, even though the Plaintiff work was not poorly performed.

25.    In July, 2014, Plaintiff reported racial discrimination through the Defendant's helpline.

26.    On or about August 4, 2014, Plaintiff drafted a letter to Defendant's Human Resources department to file a grievance of discrimination with the Defendant.

27.    On or about November 4, 2014, Plaintiff filed a Charge of Discrimination with the EEOC on the basis of race against the Defendant.

28.    On or about April 14, 2015, Plaintiff and K. Jones (white), maintenance technician got into an argument. Plaintiff called Mr. Jones a racist.  Mr. Jones pointed his finger in Plaintiff's face and Plaintiff swiped K. Jones' finger from his face in self-defense. Maintenance area manager Johnny Jones (white) stepped in between the Plaintiff and K. Jones.  Manager J. Jones then talked to both men and both men apologized and gave his word that this would never happen again. Manager J. Jones sent both gentlemen back to work.

29.    On or about April 15, 2015, at 1AM CST, manager J. Jones received phone call from Joe Daniels (white) stated that the Plaintiff was out of control. Manager J. Jones

called K. Jones back into the office and asked if he wanted to take it further. K. Jones stated that he did not want anyone to lose their job and said no. Manager J. Jones made sure K. Jones and the Plaintiff were separated for the rest of the night. The matter was immediately resolved by the direct supervisor J. Jones.

30.    Joe Daniels then reported the situation to a supervisor in another building, not over Plaintiff.  This prompted an investigation into the incident which had already been resolved.

31.    On or about April 24, 2015, Plaintiff was terminated by the Defendant.

32.    On or about April 28, 2015, Plaintiff filed a second EEOC charge for retaliation.

33.    The April 14, 2015 incident was later used by upper management to dismiss the Plaintiff.

34.    Moreover, on the night of the K. Jones incident, J. Jones stated that "everything was a big deal" to his supervisors when it involved the Plaintiff.

35.    Neither the Plaintiff nor K. Jones should have been terminated.

36.    A comparative incident took place between two other arguing employees at Nike, which occurred in December 2013, and neither employees were terminated as a result of their altercation

37.    Mr. K. Jones indicated, after both he and Plaintiff were fired, that one of his supervisor's, Ed Sterling, was out to get the Plaintiff terminated.

38.    On or about January 23, 2017, K. Jones sent a text message to the Plaintiff stating that "I was fired because if only u were fired it would look like a racial issue so they said I had threatening behavior. I did not want any of this."

39.    Mr. K. Jones stated that he was fired so that Nike could terminate the Plaintiff's employment without being subjected to another EEOC charge.

40.    Plaintiff's work product, hours worked, location of work and supervision were all under the control of NIKE.

41.    The Defendant is liable to Plaintiff under 42 U.S.C. § 1981 and the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*

42.    Plaintiff has lost wages, suffered mental anxiety and stress, lost valuable benefits and further, Plaintiff is entitled to punitive damages for the egregious actions of the Defendant.

43.    Defendant's actions constitute intentional discrimination on the basis of race (black) in violation of 42 U.S.C. § 2000e-2, Title VII of the Civil Rights Act of 1964 based on facts including, but not limited to, Plaintiff is black and was treated less favorably than his white counterparts; received unequal pay and unequal disciplinary actions; was passed over for positions in favor of white candidates; and his position was later filled by a white employee.

44.    Further, Defendant retaliated against Plaintiff in violation of the Title VII by terminating Plaintiff for a matter that was internally resolved by his direct supervisor and no further action was to be taken until the incident was made known to higher supervision who wanted to terminate Plaintiff due to his complaints of racism and for filing his charge with the EEOC.

45.    The unlawful actions of the Defendants complained about above were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff.

46.     As a consequence of the foregoing misconduct by the Defendant, Plaintiff Jackson

has suffered mental anxiety and stress and loss of income.

**REQUEST FOR RELIEF**

Plaintiff sustained monetary and non-monetary damages as a result of Defendant's

illegal conduct, and Mr. Jackson demands such legal and equitable relief as will effectuate

the purposes of 42 U.S.C. § 1981 and the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e, et seq., including but not limited to, the following:

1.   Back wages and reinstatement;

2.   Future wages in lieu of reinstatement;

3.   Compensatory damages;

4.   Punitive dames;

5.   Attorney's fees;

6.   Cost and expenses; and

7.   Such further relief as is deemed just and proper.

Plaintiff prays for actual and punitive damages in an amount to be determined by a

jury, for reinstatement and for reasonable attorney fees.

THIS the 16th of May, 2017.

Respectfully submitted,
TERRENCE JACKSON, PLAINTIFF

BY: */s/ Tressa V. Johnson*
Tressa V. Johnson BPR #26401
Kristy L. Bennett BPR #30016
JOHNSON AND BENNETT, PLLC
1331 Union Avenue, Suite 1226
Memphis, TN 38104

8

(901) 402-6515 (direct)
(901) 462-8629 (fax)
tressa@myjbfirm.com
kristy@myjbfirm.com